

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-1999

# Heidnik v. Horn

Precedential or Non-Precedential:

Docket 99-9004

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Heidnik v. Horn" (1999). *1999 Decisions*. Paper 191.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/191

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNREPORTED-NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-9004

MAXINE DAVIDSON WHITE,
as next friend to GARY HEIDNIK,

Appellant

v.

MARTIN HORN, Commissioner, Pennsylvania Department of Corrections;
GREGORY WHITE, Superintendent of the State Correctional Institution
of Pittsburgh, and the COMMONWEALTH OF PENNSYLVANIA

On Appeal from the United States District Court
For the Eastern District of Pennsylvania

(D.C. Civ. No. 97-cv-02561)
District Judge: Honorable Franklin S. VanAntwerpen

Argued July 6, 1999

Before: NYGAARD, ALITO, and McKEE, Circuit Judges

(Filed   July 6, 1999)

Billy H. Nolas, Esq. (ARGUED)
Kathy Swedlow, Esq.
Defender Association of Philadelphia
Federal Court Division
437 Chestnut Street, Suite 510
Philadelphia, PA   19106

Attorneys for Appellant

Ronald Eisenberg (ARGUED)
Christopher Diviny
Office of District Attorney
1421 Arch Street
Philadelphia, PA   19102

PER CURIAM

Before us are a motion for a certificate of appealability and for a stay of execution
filed by petitioner/appellant, Maxine Davidson White, as "next friend" for Gary Heidnik.
On July 3, 1999, the District Court issued an order that denied the petitioner/appellant's

application for a stay of execution and a certificate of appealability and dismissed her petition for a writ of habeas corpus.  The District Court's ruling was predicated on its conclusion that the petitioner/appellant lacked standing to bring an action as "next friend" to Gary Heidnik because she has not shown that he is "unable to litigate his own cause due to mental incapacity."  Whitmore v. Arkansas, 495 U.S. 149, 165 (1990).  The District Court issued a comprehensive opinion explaining in detail its analysis of the numerous arguments presented to it.

Because Heidnik is scheduled to be executed on the evening of Tuesday, July 6, we required the petitioner/appellant to file her brief on Sunday, July 4, and we directed the Commonwealth to file its response on Monday, July 5.  The petitioner/appellant filed a Reply on July 5, and the Commonwealth submitted a Supplemental Response.  We heard oral argument on the morning of July 6.  We have considered all the arguments raised before us, as well as relevant portions of the record, and we conclude that the motion for a certificate of appealability and a stay of execution should be denied.

We are largely in agreement with the opinion of the District Court, but we add the following comments concerning the petitioner/appellant's argument that the "next friend" issue is controlled by Heidnik v. Horn, 112 F.3d 105 (3d Cir. 1997).  This decision, among other things, directed the District Court to issue a stay of execution, but the  Supreme Court of the United States vacated that stay.  Horn v. White, 520 U.S. 1183 (1997).  The petitioner/appellant contends that, despite this order and despite the subsequent proceedings in state court, which resulted in a competency hearing and state court findings on the competency question, the prior panel decision requires us, by virtue of the law-of-the-case doctrine, to hold that she is entitled to "next friend" status.  We reject this argument.

Although we obviously cannot be certain of the basis for the Supreme Court's order, it seems most likely that it was based on the conclusion that the prior panel's handling  of the "next friend" question was incorrect.  But we need not resolve this question.  Even if the Supreme Court's order was not based on the conclusion that the

petitioner/appellant lacked standing, we still do not believe that the prior panel decision would control our consideration of the "next friend" issue at this juncture. The prior panel decision was based on a review of the record and findings of the federal district court. Now, however, the Pennsylvania courts have conducted a new competency hearing and rendered new findings, and the issue comes before us now on a different record and in a different procedural posture. The law-of-the-case doctrine did not prevent the Pennsylvania courts from taking these actions and did not compel the Pennsylvania courts to follow the prior panel decision. Under 28 U.S.C. 2254(e)(2), the finding of the Court of Common Pleas regarding Heidnik's competency is presumptively correct and must be accepted unless the petitioner/appellant can overcome them by clear and convincing evidence. Under 28 U.S.C. 2254 (d)(2), a federal writ may not be issued unless the state court made "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." This is a different standard of review than the standard applied by the prior panel when it ruled in 1997, and for this reason the prior panel's decision does not bind us here.

We agree with the District Court that the state court factual findings regarding Heidnik's competency are adequately supported by the record, and we reject the petitioner/appellant's contention that they are not entitled to deference due to alleged procedural defects. We will therefore deny the application for a certificate of appealability and a stay of execution.

TO THE CLERK OF THE COURT:
Please file the foregoing opinion.
No. 99-9004, MAXINE DAVIDSON WHITE, as next fried to GARY HEIDNIK, v. MARTIN HORN, Commissioner, Pennsylvania Department of Corrections; GREGORY WHITE, Superintendent of the State Correctional Institution of Pittsburgh; and the COMMONWEALTH OF PENNSYLVANIA

McKee, Circuit Judge dissenting

Mr. Heidnik is clearly deserving of whatever sanction society reserves for its most heinous offenders. That, of course, is not the issue before us. That issue was presented to the

jury that heard the nightmarish evidence and decided to impose a sentence of death after finding that Heidnik was guilty of the atrocities he had been charged with.

Rather, the sole issue before us is whether his daughter has standing under Whitmore v. Arkansas, 495 U.S. 149 (1990). In order to resolve that question we must decide "whether [she] has provided an adequate explanation why [Mr. Heidnik] cannot appear on [his] own behalf to prosecute the action." Heidnik v. Horn, 112 F.3d 105, 108 (3rd Cir. 1997 (per curiam) That inquiry, in turn, depends upon whether she has established that he is mentally incapable of deciding for himself to forego whatever claims he would otherwise be able to assert on appeal.

Much of the controversy before us now is focused on whether our earlier decision still binds us under the law of the case doctrine even though our stay was subsequently vacated by the United States Supreme Court. I doubt very much that we are still bound, but the hectic and hurried manner in which we have had to decide this incredibly intricate inquiry into Supreme Court procedure has not afforded me, at least, sufficient opportunity to resolve that question with enough certainty to allow it to govern my analysis now. However, even the Commonwealth concedes that the prior action of the United States Supreme Court does not invalidate our prior analysis of the record that was before us in 1997. I find that analysis compelling, and persuasive. Heidnik is the same now as he was then. At the hearing before the District Court, the Commonwealth agreed that Heidnik's mental condition on June 30, 1999 was the same that it was in 1997 when we decided In re Heidnik and found that Heidnik was Whitmore incompetent. The following exchange occurred:

THE COURT: Has there been any change factually? Has there been any the plaintiff Petitioner says there's no real change in Heidnik's condition?

[DISTRICT ATTORNEY]: Your Honor, I don't think that there has been a change in Mr. Heidnik's condition according to their experts and according to our experts . . . .

THE COURT: So basically what I have even though we have had this new hearing with different witnesses, there is no real change in his condition.

N. T. 6/30/99 at 84 (Dist. Ct. Proceeding).  In 1997, we reviewed a nearly identical record to
determine  Heidnik's competency to waive his appellate rights, and we rejected the
District Court's finding that Heidnik's thought process was sufficiently moored to reality
to allow him to knowingly, voluntarily, and intelligently execute such a waiver.  We
stated:

> In the final analysis the record reflects a situation in which a
> paranoid schizophrenic suffering from broad-based delusional
> perceptions has made a decision to die immediately rather
> than pursue available judicial remedies that conceivably
> might spare his life.  The only explanation he has advanced
> for having chosen immediate death is that after his death the
> public will become convinced that he was an innocent victim
> of a conspiracy and that the realization that he has been
> executed though innocent will end capital punishment once
> and for all.  Petitioners' three experts unanimously concluded
> that Heidnik's death decision is based on his delusional
> perception of reality--and has no rational basis.  Dr. O'Brien
> [the Commonwealth's witness] has simply failed to explain
> how Heidnik's choice has a rational basis and is not based on
> his delusional perception.

> In short, the record does not support a rational explanation as
> to  why, even if Heidnik has rationalized to himself that he
> was innocent, he could, despite his delusions, make a rational
> decision to die.  A psychiatric expert might have supplied this,
> but O'Brien did not.  In the absence of any effective counter,
> the petitioner has met her Whitmore burden, and the order of
> the district court must be vacated.

In re Heidnik, 112 F.3d at 112.   Accordingly, we ordered that the District Court to stay
the then imminent execution and designate Maxine Davidson Heidnik's next friend, and
appoint counsel for her.
     Our decision was, of course, rendered without the benefit of the testimony of  Dr.
Sadoff.  His testimony supports the Commonwealth's argument that Heidnik's choice is
rooted in his attempt to derive some social meaning from his death, and therefore a
rational decision.  That position was asserted by Dr. O'Brien before, and we rejected it.
This does not, of course, mean that the subsequent corroboration of Dr. O'Brien's
testimony can be ignored.  However, the corroboration offered by Dr. Sadoff still fails to

answer the fundamental inquiry we posed in 1997. It still "simply failed to explain how Heidnik's choice has a rational basis and is not based on his delusional perception." White, 112 F.3d at 112. Without an answer to that question, I do not think that Heidnik can reasonably be found to be sufficiently competent to decide to forego his appellate rights.

The second thing that has changed since our decision in 1997 is the standard of our review. In 1997 we were reviewing the District Court's findings based upon testimony elicited when it held a Whitmore hearing. Now, of course we, must review the finding of the state court. That review is governed the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. 2254(d) ("AEDPA"). However, I believe that based on the record as it now stands, as well as when we originally made the statement set forth above, Ms. White has cleared even the heightened bar of AEDPA, and should be granted next friend status. Given the volume of material referring to Heidnik's persisting delusional state, Ms. White has shown that the Court of Common Pleas' finding that Heidnik is sufficiently rational to knowingly and intelligently waive his appellate rights is "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Although the standard is now different, see Matteo v. Superintendent, 171 F.3d 877 (1999) (en banc), the conclusion is the same. Heidnik is "a paranoid schizophrenic suffering from broad-based delusional perceptions [who] has made a decision to die immediately rather than pursue available judicial remedies that conceivably might spare his life." His "decision" is inextricably intertwined with a belief structure that the Commonwealth concedes is genuine and not fabricated. That delusional belief structure is inextricably connected to his decision to forego an appeal. Moreover, the record establishes that the contrary finding of the Court of Common Pleas is simply not a reasonable assessment of the evidence that was presented there. As the district court correctly notes, under 28 U.S.C. 3354(e)(1)

This presumption of correctness can be overcome only by

clear and convincing evidence. The evidence must
demonstrate either that the decision "was contrary to, or

> involved an unreasonable application of, clearly established federal law," or that it "was based on an unreasonable determination of the facts."  28 U.S..  2254(d)(1)-(2).  The state court determination of a defendant's competency is entitled to the statutory presumption of correctness.  See Demosthenes v. Baal, 495 U.S. 731, 736 (1990); Miller v. Fenton, 4874 U.S. 104, 113.

Dist. Ct. Op. at 24.   In my opinion, Ms. White has overcome the presumption of correctness by clear and convincing evidence.  Accordingly, the District Court incorrectly allowed the state court's findings to determine the outcome in the District Court.

It may of course be that all of the claims that are waiting in the wings until the Whitemore issue is decided would one day be presented to a court in a proper context, and denied.  If that were to happen, Heidnik's execution would follow.  But it would then be accomplished without the cloud of competency that now hangs over his pending execution.

Few, if any outside his family will mourn Heidnik's execution.  His crimes are etched into the collective memories of everyone who is a member of this community, and his lunacy made everyone feel less human to think that anyone could do what he did to another human being. Nevertheless, as I said at the outset, the legal inquiry we are forced to undertake does not, at this stage of the proceedings, allow his horrors to define our analysis.

It may well be that today we are writing the final chapter of the terror that was Heidnik.  However, I share the thoughts so poignantly echoed by  the Chief Justice of the Supreme Court of Pennsylvania when he recently wrote in a concurring opinion involving an issue other than the one now before us:

> although I believe the record, state and federal, demonstrates that Gary Heidnik, . . . is presently suffering from mental illness in the form of paranoid schizophrenia . . ., and in my view, is insane,  I cannot stand by and say nothing while an insane person is put to death by the state contrary to the mores of civilized society.

Heidnik v. White, 554 Pa. 177, 191(1998) (Flahery, C.J. Concurring) (internal quotation marks omitted).

Accordingly, I respectfully dissent from the decision of my colleagues.